UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION


David Jenkins, # 289283,                )   **C/A No. 4:09-0267-GRA-TER**
                                          )
                                          )
                     Petitioner,   )
                                          )
vs.                                       )REPORT AND RECOMMENDATION
                                          )
Warden McKither Bodison,        )
                                          )
                                          )
                     Respondent.   )
_____)


     Petitioner, David Jenkins ("petitioner/Jenkins"), a *pro se* prisoner, seeks habeas relief

pursuant to 28 U.S.C. §2254. This matter is before the Court on the respondent's motion for

summary judgment (document # 17).[1]

     The petitioner filed this petition for a writ of habeas corpus on February 4, 2009. On

May 7, 2009, the respondent filed a motion for summary judgment, along with supporting

memorandum and exhibits. The undersigned issued an Order filed May 8, 2009, pursuant

to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), advising the petitioner of the motion

---

[1]    [1] This habeas corpus case was automatically referred to the undersigned United States
Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02, DSC.
Because this is a dispositive motion, this report and recommendation is entered for review by the
district judge.

for summary judgment procedure and the possible consequences if he failed to respond adequately. Petitioner filed a response in opposition.

# I.  PROCEDURAL HISTORY

The procedural history as set out by the respondent has not been seriously disputed by the petitioner. Therefore, the undisputed procedural history as stated by the respondent is set forth herein.

Petitioner is presently confined to the South Carolina Department of Corrections pursuant to Orders of Commitment from the Clerk of Court from Charleston County. At the May 2002 term, the Charleston County Grand Jury indicted petitioner for murder (02-GS-10-3071) [PCR App. 1006].

Petitioner was represented at the trial level by Assistant Public Defenders Jennifer K. Shealy and David Wolf, Esquires. From December 2 to 5, 2002, petitioner was tried before the Honorable Deadra L. Jefferson and a jury. He was convicted as charged [PCR App. 868], and sentenced by Judge Jefferson to forty (40) years [PCR App. 882, 1070].

A timely notice of appeal was filed with the South Carolina Court of Appeals. Chief Appellate Defender Joseph L. Savitz, III, was appointed to represent petitioner in his direct appeal. On June 17, 2004, Savitz filed with the South Carolina Court of Appeals a "no merit" Anders Final Brief of Appellant and Petition to be Relieved of Counsel, in which he  raised the following issues:

The judge erred by failing to instruct the jury on the lesser-included offense of voluntary manslaughter.

The State filed a letter Return on March 1, 2004. Petitioner filed a "*Pro se* Brief of Appellant", dated July 29, 2004, in which he raised the following issues:

I.     Does the S.C. Court of Appeals have Subject Matter Jurisdiction To entertain, and adjudicate Appeal when There is No written order granting or denying his post Trial motion For A New Trial To Comport and adhere to rule 29 SCRCivp? (sic)

II.    Did the Lower Court have Subject Matter Jurisdiction when the necessary element of The Time of The offense was not alleged in The indictment with Certainty? (sic)

III.   Did the Lower Court have Subject Matter Jurisdiction when the necessary element of the Time of death of the deceased was not sated in the indictment? (sic)

IV.    Did the Lower Court have Jurisdiction to entertain and adjudicate Appellants case when his Indictment was not "Filed" with The Clerk of Court? (sic)

V.     Did the Lower Court have Subject Matter jurisdiction when Appellant's Indictment is vague and ambiguous and Appellant could not properly prepare his defense? (sic)

VI.    Did the Lower Court err by not granting Appellant's Motion for a Directed Verdict? (sic)

VII.   Did The Trial Court error by Not granting Appellants motion For A mistrial when The prosecutor Threatened, and Intimidated The Witnesses? (sic)

VIII.  Did the Trial Court error by Not Suppressing The Identification of Appellant when the Identification was improper, suggestive, unreliable, and a Show? (sic)

IX.    Did the Trial Court error by Not Charging the Jury on The Law of Self defense when there was a modicom in the record for the jury Instruction? (sic)

X.      Did the Trial Court error by allowing the prosecutor To make reference To The witnesses Statements when The provisions of the S.C. Code Ann § 19-1- 80 were not met? (sic)

XI.     Did the Trial Court error by not granting Appellants motion For A New Trial when the evidence did not Support The verdict? (sic)

On January 19, 2005, the South Carolina Court of Appeals issued an opinion in which it conducted Anders review, and affirmed. <u>State v. Jenkins</u>, Unpub. Op. No. 05-MO-050 (S.C. Ct. App. 2005). Petitioner then filed a *pro se* Petition for Rehearing and Rehearing En Banc, which was denied by orders filed March 17, 2005. The Remittitur was issued on April 25, 2005.

Petitioner next filed his Application for Post-Conviction Relief ("APCR") on June 27, 2005 (05-CP-10-2682), in which he raised the following issues:

A.      Ineffective Assistance of Trial Counsel

B.      6th   Amendment Violation

C.      14th Amendment Violation

[PCR App. 961]. The State filed a Return on December 12, 2005. On June 1, 2007, Petitioner through appointed attorney Charles T. Brooks, III, filed an Amended Application in which he raised the following issues:

> Appellant counsel failed to argue to the Appellate Court that the Applicant's 5th and 6th Amendment rights were violated with the identification of the applicant.

[PCR App. 971].

An evidentiary hearing was held before the Honorable Daniel F. Pieper on July 23rd, 2007. [PCR App. 979]. Petitioner was present and represented by his counsel Brooks, and called himself, Shealy, Wolf, and Savitz to testify. The State called no witnesses. On July 26, 2007, Judge Pieper issued an Order in which he denied relief. [PCR App. 1057].

A notice of appeal was filed with the state supreme court. Assistant Appellate Defender M. Celia Robinson, of the South Carolina Office of Appellate Defense, represented petitioner in the PCR appeal. On March 21, 2008, Robinson filed a "no merit" Johnson Petition for Writ of Certiorari and Petition to be Relieved as Counsel, in which she raised the following issue:

> Did the PCR judge err in denying and dismissing the application where petitioner's right to a fair trial was prejudiced by his trial counsel's provision of ineffective assistance in failing to investigate, in failing to communicate with the defendant, and also in failing to craft an approach to the defense which was consistent with the evidence?

The State filed a letter Return dated March 25, 2008. On October 8, 2008, the state supreme court denied the certiorari petition after Johnson review, and the Remittitur was issued on October 24, 2008.

## II. HABEAS ALLEGATIONS

Petitioner filed his petition on January 30, 2009, in which petitioner raises the following allegations, quoted verbatim:

Ground One:                The Judge erred by failing to instruct on lesser included offense.

Supporting Facts:          As a matter of law, petitioner was entitled to a jury instruction on the lesser included offense. Petitioner's claim was that the victim rush him with what appeared to be a gun and was entitled to the lesser included offense instruction.

Ground Two:                Ineffective assistance of counsel for failing to request lesser included offense.

Supporting Facts:          Petitioner testified at the Post Conviction that the victim rushed him and the victim had what appeared to be a weapon and the gun went off resulting in the death of the victim.

(Petition, Doc. #1).

## III.  SUMMARY JUDGMENT

As stated above, on May 7, 2009, the respondent filed a return and memorandum of law in support of their motion for summary judgment.

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases.  See Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972).  The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in

the pleadings to allege facts which set forth a federal claim, Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor can the court

 assume the existence of a genuine issue of material fact where none exists.   If none can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c).

The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial."  The opposing party may not rest on the mere assertions contained in the pleadings.  Fed. R. Civ. P. 56(e); Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. See Fed. R. Civ. P. 56(c).  Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact."  In Celotex, the Court held the defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the petitioner had failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof.  Celotex, 477 U.S. at 322-323.

## IV. STANDARD OF REVIEW

In addition to the standard that the court must employ in considering motions for summary judgment, the court must also consider the petition under the requirements set forth in 28 U.S.C. § 2254. Under § 2254(d),

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the State court proceeding.

As "a determination of a factual issue made by a State court shall be presumed to be correct," a petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). With respect to reviewing the state court's application of federal law, " '[a] federal habeas court may grant the writ if the state court identifies the correct governing principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.' " Humphries v. Ozmint, 397 F.3d 206, 216 (4th Cir. 2005) (quoting Williams v. Taylor, 529 U.S. 362, 413 (2000)). Further, "an 'unreasonable application of federal law is different from an incorrect application of federal law,' because an incorrect application of federal law is not, in all instances, objectively unreasonable." Id.  "Thus, to grant [a] habeas petition, [the court] must

conclude that the state court's adjudication of his claims was not only incorrect, but that it was objectively unreasonable." McHone v. Polk, 392 F.3d 691, 719 (4th Cir. 2004).

## V.   DISCUSSION AS TO PROCEDURAL BAR

### A.  Procedural Bar

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

### 1.  Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions.  Applications for writs of habeas corpus are governed by 28 U.S.C.§ 2254, which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States."  The statute states in part:

(b)(1)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(I) there is either an absence of available State corrective process; or

(ii) circumstances exist that render such process, ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court.

The United States Supreme Court has consistently enforced the exhaustion requirement.

The exhaustion doctrine existed long before its codification by Congress in 1948. In Ex parte Royall, 117 U.S. 241,251 (1886), this Court wrote that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act . . .

Rose v. Lundy, 455 U.S. 509, 515 (1982).

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state

law, he is required to state all his grounds in that appeal, <u>See</u> SCAR 207 and <u>Blakeley v. Rabon</u>, 266 S.C. 68,221 S.E.2d 767 (1976). The second avenue of relief is by filing an application for post-conviction relief (PCR). <u>See</u> S.C. Code Ann.§17-27-10 et seq. A PCR applicant is also required to state all of his grounds for relief in his application. <u>See</u>, S. C. Code Ann. § 17-27-90. Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts, <u>Patterson v. Leeke</u>, 556 F.2d 1168 (4th Cir. 1977) and <u>Richardson v. Turner</u>, 716 F.2d 1059 (4th Cir. 1983). However, if petitioner has failed to raise the issue before the state courts, but still has any means to do so, he will be required to return to the state courts to exhaust the claims. <u>Rose</u> 455 U.S. at 515.


<u>2.Procedural bypass</u>

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue

before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, <u>Smith v. Murray</u>, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, (i.e., direct appeal, appeal from PCR denial) and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote

> . . . not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

<u>Reed v. Ross</u>, 468 U.S. 1, 10-11 (1984).

Although the federal courts have the power to consider claims despite a state procedural bar,

> . . . the exercise of that power ordinarily is inappropriate unless the defendant succeeds in showing both "cause" for noncompliance with the state rule and "actual prejudice" resulting from the alleged constitutional violation.

Smith v. Murray, supra, quoting Wainwright v. Syke s, 433 U.S. at 84 (1977); see also Engle v. Isaac, 456 U.S. 107, 135 (1982).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing(s) of cause and prejudice, the federal courts generally decline to hear the claim. See Murray v. Carrier, 477 U.S.478, 496 (1986).

### 3. Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner before this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. Matthews v. Evatt, 105 F.3d 907 (4th Cir. 1997); cert.denied, 118 S.Ct. 102 (1997) citing Coleman v. Thompson, 501 U.S. 722, 735 n. 1 (1991); Teague v. Lane, 489 U.S. 288,297-98 (1989); and George v. Angelone, 100 F.3d 353,363 (4th Cir. 1996).

### 4. Cause and Actual Prejudice

The requirement of exhaustion is not jurisdictional and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. Granberry v. Greer, 481 U.S. 129, 131 (1987). In order to have such claims considered, a petitioner must show sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, Coleman v. Thompson, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. Murray v. Carrier, 477 U.S. 478 (1986). A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. Murray v. Carrier, 477 U.S. 478 (1986); Clozza v. Murray, 913 F.2d 1092 (4th Cir. 1990), cert. denied, 499 U.S. 913 (1991); and Clanton v. Muncy, 845 F.2d 1238 (4th Cir. 1988), cert. denied, 485 U.S. 1000 (1988).

Absent a showing of "cause," the court is not required to consider "actual prejudice." Turner v. Jabe, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. Murray v. Carrier, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. He is required to prove that specific errors infected the trial and were of constitutional dimensions. United States v. Frady, 456 U.S. 152 (1982).

In the case of Kornahrens v. Evatt, 66 F.3d 1350 (4th Cir. 1995), cert. denied 517 U.S.1171 (1996), 116 S.Ct. 1575 (1996), the Court of Appeals stated that once a claim is determined to be procedurally barred, the court should not consider the issue on its merits. The Court noted that it is always tempting to discuss the merits as an alternative reason for

14

a conclusion, but that once a court finds an issue to be procedurally barred, all discussion which follows is only dicta. See Karsten v. Kaiser Foundation Health Plan, 36 F.3d 8, 11 (4th Cir. 1993). Once a court has determined that a claim is procedurally barred, it should not stray into other considerations.

## VI. ANALYSIS

The respondent contends that the issues raised in this habeas petition are technically exhausted.

First, the undersigned notes that respondent asserts that petitioner's allegations in his petition are procedurally defaulted in that the state supreme court did not consider the merits of any issue raised on certiorari since collateral appellate counsel filed a Johnson Petition for Writ of Certiorari. Respondent argues that the South Carolina Supreme Court in State v. Lyles, ___ S.C. ____, 673 S.E.2d 811 (2009), made clear that the state appellate court's review pursuant to Anders or, by analogy Johnson, does not involve consideration of the merits of any issue. By this argument, respondent appears to argue that a petitioner cannot exhaust any claim for habeas purpose by way of an Anders brief on direct appeal or a Johnson petition for writ of certiorari following denial of a PCR. However, three District Court cases have not agreed with respondent's argument. See Ehrhardt v. Cartledge, 2009 WL 2366095 (D.S.C. July 30, 2009); Missouri v. Beckwith, 2009 WL 3233521 (D.S.C. Sep. 29, 2009); Singleton v. Eagleton, 2009 WL 2252272 (D.S.C. July 28, 2009). Respondent

presents no authority supporting its position, and the undersigned will address the claims on the merits and on Respondent's further arguments for summary judgment.

**Ground One**

In Ground One, petitioner asserts that the trial judge erred by failing to instruct the jury on the lesser included offense of voluntary manslaughter based on testimony that the victim rushed petitioner after a verbal altercation.

Respondent argues that this issue is procedurally defaulted from federal habeas review as it was not properly raised at trial. Respondent asserts that defense counsel did not raise the issue to the trial court. Therefore, respondent argues that this free standing claim would not have been preserved for appeal, even though it was raised in the <u>Anders</u>[2] Brief.

Trial counsel did not request a charge of voluntary manslaughter and did not object to its omission. Therefore, this issue was not raised before the trial court; accordingly, this issue was not preserved as a freestanding issue for direct appeal. Cf. <u>State v. Bradley</u>, 263 S.C. 223, 209 S.E.2d 435, 436 (S.C.1974)[Failure of defendant to assert in trial court that his guilty plea was involuntarily entered precluded consideration of such claim on appeal]. Therefore, it is recommended that this claim be dismissed.[3]

---

[2] <u>Anders v. California</u>, 386 U.S. 738 (1967).

[3] Additionally, the undersigned concludes that this is an issue of evidence and the court will not grant relief based on the state's own standards for sufficiency of the evidence. <u>See</u> <u>Wilson v. Greene</u>, 155 F.3d 396, 407 (4th Cir. 1998). Thus, it is recommended that this issue be dismissed and respondent's motion for summary judgment granted with respect to this ground.

**Ground Two**

In Ground Two, petitioner asserts that counsel was ineffective for failing to request a charge for a lesser included offense. Respondent argues that this issue should be dismissed as it was reasonable for counsel to strategically decide to go with an "all-or-nothing" strategy rather than dilute their argument with a presentation of "he didn't do it, but if he did, it was manslaughter." (Respondent's memorandum, p. 16). Additionally, respondent argues that "counsel cannot be faulted for failing to attempt a half-hearted argument for voluntary manslaughter from the State's evidence, where Petitioner did not even tell counsel his version of events prior to trial." Id. Respondent asserts that "certainly counsel here were not deficient for working with the version of events given to them by petitioner." (Memorandum, p. 19).

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). In the case of Strickland , supra, the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A Petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing

professional norms." <u>Turner v. Bass</u>, 753 F.2d 342, 348 (4th Cir. 1985) (quoting <u>Strickland</u>, <u>reversed on other grounds</u>, 476 U.S. 28 (1986)).  In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal. <u>Strickland</u> requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional  errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

<u>Strickland</u>, at 694.

The court further held at page 695 that:

> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct . . . the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the <u>wide</u> <u>range</u> of professionally competent assistance.  (Emphasis added.)

In <u>Lockhart v. Fretwell</u>, 506 U.S. 364 (1993), the Supreme Court clarified its definition of prejudice quoted above, stating that "an analysis focusing solely on mere outcome determination . . . is defective."  Instead, an appropriate analysis of prejudice should consider "whether the result of the proceeding was fundamentally unfair or unreliable."  Therefore, a court analyzing the prejudice prong should not "set aside a conviction or sentence solely because the outcome would have been different but for counsel's error."  <u>See</u> <u>Williams v. Taylor</u>, Nos. 98-14, 98-16, 1998 WL 883336 (4th Cir. Va. Dec. 18, 1998) (quoting <u>Lockhart</u>, at 369-70).

At the PCR hearing, trial counsel Shealy, lead counsel for trial, testified that petitioner maintained to her that he went inside the Hot Spot, the convenience store where the victim was shot, and left before the shooting. Petitioner maintained that he was not involved with the shooting. Trial Counsel Shealy testified that petitioner told her "repeatedly that he was not involved in the shooting at all" (Tr. 1012). Trial Counsel Shealy testified that she sought the petitioner's "permission to speak with his father, hoping that he would be able to convince his son to confess to his attorneys but that her efforts were to no avail." (Tr. 1013). Shealy also testified that she did not request a voluntary manslaughter charge because she was concerned that she would loose credibility with the jury, since the theory of the case was that petitioner was not present. Shealy testified that "so, yes, any time there's a murder charge you question would there be a lesser included offense or a defense that should be pursued, but Mr. Jenkins was maintaining that while he'd gone into the store he was not present during the shooting and not involved in it at all." (Tr. 1013). Counsel Shealy also testified that she discussed a possible voluntary manslaughter charge with petitioner and stated that "while I recognize you can submit inconsistent charges. We were very concerned that any credibility that we may have with the jury would be lost if we were maintaining that he wasn't present yet then in some way asking them to believe that he was there but it was in the heat of the moment." (Tr. 1014).

Trial Counsel David Wolf also defended petitioner at trial and testified at the PCR hearing. Wolf testified that self-defense never came up because the petitioner's position was that he was not involved in the shooting. Wolf testified that there was a surveillance video

from the convenience store that showed a person who looked like the applicant walking in the store, purchasing some items, going out to his car, then returning with something. However, Wolf testified at the PCR hearing that petitioner maintained it was not him.

The PCR Court found the petitioner was not credible and trial counsel was credible. (Tr. 1062). The PCR court found that counsel articulated a valid reason for employing the trial strategy of asking the judge to charge the jury "straight up" and not ask for a charge on the lesser-included offense of voluntary manslaughter. (Tr. 1062).

The undersigned has reviewed the record and concludes that respondent's motion for summary judgment should be granted on this issue. The record supports the PCR judge's finding that the petitioner has not demonstrated that his attorneys' performance was deficient by showing that their representation fell below an objective standard of reasonableness and, further, he has not shown that the attorneys' performance actually prejudiced him. Petitioner maintained that he was not in the store at the time of the shooting. Therefore, trial counsel's strategy was reasonable in not wanting to lose credibility with the jury since it was their position that petitioner was not even in the store at the time of the shooting. As found by the PCR court, the petitioner's trial counsel articulated a reasonable trial strategy regarding the decision not to request a voluntary manslaughter instruction. See Whitehead v. State, 417 S.E.2d 530, 531 (S.C.1992) (reasonable trial strategy will not be held ineffective). When considering a claim of ineffective assistance of counsel based on tactical decisions "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption

20

that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland v. Washington, 466 U.S. at 689. Thus, courts are instructed not to second guess an attorney's trial strategy and tactics. Goodson v. United States, 564 F.2d 1071, 1072 (4th Cir.1977); Stamper v. Muncie, 844 F.2d 170 (4th Cir.1991).

As the PCR court's rejection of the ineffective assistance of counsel ground for relief did not result in an unreasonable application of Hill and Strickland and was not based upon an unreasonable determination of facts in light of the state court record, this ground is without merit. The state court decisions did not involve a decision that "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(1), (2); Williams, supra. Thus, the undersigned recommends that the respondent's motion for summary judgment be granted on this issue.

## VI. CONCLUSION

Based on the foregoing, it is recommended that respondent's motion for summary judgment (docket entry #17) be GRANTED and the petitioner's Petition for Writ of Habeas Corpus should be denied, and the petition dismissed without an evidentiary hearing.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

January 29, 2010
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**